# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
## Assigned on Briefs July 16, 2013

## STATE OF TENNESSEE v. SUSAN DESHON WINTERS

### Appeal from the Circuit Court for Coffee County
### No. 39347F    Vanessa A. Jackson, Judge

---

### No. M2012-02313-CCA-R3-CD - Filed September 5, 2013

---

The Defendant-Appellant, Susan Deshon Winters, was indicted by a Coffee County Grand Jury for bribery of a public servant (count 1), possession of .5 grams or more of cocaine with the intent to sell or deliver (count 2), possession of marijuana with the intent to sell or deliver (count 3), and possession of drug paraphernalia (count 4). See T.C.A. §§ 39-16-102; 39-17-417(a)(4), (c)(1); 39-17-417(a)(4), (g)(1); 39-17-425. Pursuant to a plea agreement, Winters entered guilty pleas to the charged offenses, with the trial court to determine the length and manner of service of the sentences. The trial court subsequently sentenced Winters as a Range I, standard offender to an effective sentence of eight years in the Tennessee Department of Correction. On appeal, Winters argues that the trial court abused its discretion in denying her a sentence of split confinement. Upon review, we affirm the judgments for bribery of a public servant, possession of marijuana with the intent to sell or deliver, and possession of drug paraphernalia. However, because the record indicates that Winters entered a guilty plea to the indicted offense of possession of .5 grams or more of cocaine with the intent to sell or deliver, a Class B felony, rather than the offense of possession of less than .5 grams of cocaine with the intent to sell or deliver, a Class C felony, we reverse the judgment in count 2 and remand the case for resentencing on that conviction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded for Resentencing

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and ROGER A PAGE, JJ., joined.

C. Brent Keeton, for the Defendant-Appellant, Susan Deshon Winters.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Charles Michael Layne, District Attorney General; and Marla R. Holloway, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Facts.** We initially note that Winters did not include the transcript from her July 25, 2012 plea submission hearing in the record on appeal.[1] However, we were able to glean the facts regarding the aforementioned offense from the indictment, sentencing hearing transcript, and presentence investigation report. As we will explain, this record is sufficient for a meaningful review of the issue on appeal, despite the absence of the transcript from the plea submission hearing.

At the September 26, 2012 sentencing hearing, the State admitted the presentence investigation report, which outlined the facts supporting Winters's guilty pleas:

On December 22, 2011, investigators with the Coffee County Sheriff's Department received information that Susan Deshon Winters was bringing illegal drugs into the [Coffee County J]ail. The informant advised that family members of inmates would call Winters and arrange for her to pick up a package. Winters would then bring the contents of the package into the jail. Winters would be paid $50.00 each time she delivered a package to the inmate. On December 30, 2011, the informant contacted investigators and advised that an inmate's family member had left a package in their possession to give to Winters. The investigators met with the informant and took possession of the package. Investigators inventoried the contents of the package, marked the contents, then repackaged them. Inside the package, investigators found a quantity of marijuana and a quantity of cocaine. On January 2, 2012, investigators met with the informant and gave them the package and $50.00 in prerecorded funds. The informant, observed closely by multiple investigators in various locations, met with Winters in the restroom of Wendy's in Manchester. Winters, who was accompanied by her father, then exited the restaurant. Investigators arrested Winters as she attempted to enter her vehicle. Winters was wearing her Coffee County Jail uniform at the time of her arrest. Investigators instructed Winters to produce the package she had received. Winters then retrieved the package from her bra. A search of Winters'[s] pants pockets revealed the $50.00 in currency issued to the informant. Winters was then transported to the Coffee County Sheriff's Department for further questioning. Winters'[s] father was allowed to leave. Upon further questioning, Winters admitted to bringing contraband into the jail

---

[1] On June 17, 2013, Winters filed a motion to supplement the record with the transcript from the guilty plea hearing. Because we conclude that the record is sufficient for a meaningful review of the issue on appeal, no supplementation is necessary.

for the past month or so. She stated that she had delivered five (5) packages and was paid $50.00 each time. Winters stated that she would remove the contents of the package, and drop the contents on the floor of the dress out room [and] then keep walking. Winters stated that another individual would then retrieve the contraband and deliver it to the cell block. Winters admitted that she was aware that the packages contained drugs. She stated that one of the packages she had delivered contained cocaine. Winters stated that she kept a quantity of the cocaine for her personal use. A subsequent search of Winters'[s] residence revealed a quantity of cocaine, cut into a line, along with a razor blade and straw. Investigators also found a quantity of marijuana and clear plastic baggies. Winters was then transported back to the Coffee County Jail for booking.

The presentence report also noted that in 1989 Winters had been charged in the Marion County Circuit Court in Florida with forgery and passing forged checks, for which her adjudication of guilt was withheld upon service of two years of probation and payment of fines and costs.

Joyce Reed, the presentence report investigator, testified that Winters entered a plea of nolo contendere to charges in Marion City, Florida, and "[a]n adjudication was withheld, so there was not a criminal conviction." Winters was then ordered to complete two years of probation and pay a fine and costs, which she completed. Reed stated that the charge in Florida was considered criminal behavior for the purpose of an enhancement factor (1) because the charge was never expunged, even though the adjudication of guilt was withheld. Reed also stated that enhancement factor (14), that Winters abused a position of public trust in a manner that significantly facilitated the commission or the fulfillment of the offense, applied in this case because Winters used her position as a correction officer to commit the crimes in this case.

Winters told Reed that "she smoked marijuana to ease the symptoms of [her] Glaucoma." She first began smoking marijuana at age thirty-five and continued to use this drug until her incarceration in this case. Winters also told Reed that she used cocaine on a daily basis from age thirty-two to thirty-four. Although she had never been formally diagnosed, Winters believed that she was suffering from anxiety related to the death of her mother. Reed said that Winters never told her about any traumatic experiences she had endured, other than a couple of abusive relationships she had as an adult.

Reed said Winters disclosed that she was engaged to Everett Muth, who was incarcerated. When Reed ran a background check on Muth, she discovered that he was currently serving a twelve-year sentence in the Tennessee Department of Correction for

"various aggravated burglaries, theft, [and] failures to appear." She also discovered that Muth had been incarcerated at the Coffee County Jail during the entire length of Winters's employment there as a correction officer. Winters admitted that she had begun the relationship with Muth while he was incarcerated at the county jail. Reed was able to verify that Winters had worked as a real estate agent in Florida and had returned to Tennessee in August 2009.

On cross-examination, Reed stated that Winters was cooperative and "for the most part" very polite about giving her information for the presentence investigation report. She acknowledged that Winters had a more extensive employment history than most defendants she interviewed.

Danny Farrell, an investigative sergeant with the Coffee County Sheriff's Department, testified that he was the case officer on Winters's case. He stated that his job requires him to "take care of all the fights in the jail, contraband coming into the jail, and any other issues that need to be investigated in the Coffee County Jail." He stated that drugs in the jail were "a growing problem" because "inmates, trustees . . . will bring narcotics, . . . synthetic marijuana, cocaine, meth, crushed up pills, tobacco . . . . They will bring it in in the cavities of their body, have family members send a letter in." He also stated that inmates were putting GHB [Gamma Hydroxybutyrate ], the date rape drug, in body washes to get it inside the jail. Investigator Ferrell stated that "[i]f the narcotics get [inside the jail], then fights arise . . . because [the inmates are] not sharing or selling, they get high, and we have problems." He said that when drugs enter the jail, it causes a security threat and endangers the corrections officers, inmates, and visitors to the jail.

Investigator Ferrell stated that Winters was not the first corrections officer to bring drugs into the jail, and she would likely not be the last. He said he also had an open investigation regarding other public officials, including corrections officers, who were currently bringing drugs into the jail.

At the beginning of this investigation, Investigator Ferrell was informed that Winters was having a relationship with Everett Muth, an inmate at the jail. He asked Winters about her relationship with Muth on the day of her arrest, but she denied it. However, he stated that during the search of Winters's home, he found proof that she and Muth were involved in a relationship. Investigator Ferrell stated that Winters's involvement with an inmate violated the standard operating procedures at the sheriff's department.

Investigator Ferrell said that Winters told him she received $50 each time that she brought drugs into the jail and that she had earned $350 to $400 in the past month for the

drugs she had delivered. He believed that Winters had brought drugs into the jail approximately eight times.

On cross-examination, Investigator Ferrell stated Winters was cooperative during his investigation and had given him a confession. He acknowledged that in the past, female correctional officers had "been assaulted, spit on, [had] urine throw[n] on [them] and . . . feces throw[n] on them [by inmates at the Coffee County Jail]."

On redirect examination, Investigator Ferrell stated that Winters never reported to him that she was having problems with any of the inmates. He stated that he would have assisted Winters if she had been threatened or had any other issues with the inmates.

Earl Cairns, Winters's father, testified that Winters had previously sold real estate in Florida and was a "million-dollar producer." He said that Winters moved to Coffee County to assist her mother, who had become ill with cancer and dementia. Cairns said that Winters was a talented musician and had been his church's pianist. He said he had recently learned that Winters had been raped when she was seventeen years old. Cairns stated that he would provide support for Winters whenever she was released. He said Winters had already been incarcerated for 269 days, and he did not believe that she would ever violate the law again. He believed that Winters committed the offenses in this case while under "extreme duress."

Winters, age fifty-three, testified that she moved from Florida to Tennessee in 2009 because the real estate market plummeted and because her mother was diagnosed with Alzheimer's. She stated that she cooked, cleaned, ran errands, and was company to her parents as her mother's illness progressed. She said she had been steadily employed since high school and that she was a professional pianist and had played for a Presbyterian church, of which she was a member, for 15 years.

Winters stated that she had been incarcerated since January 2, 2012, because of the charges in this case. She said that she worked in the Coffee County Jail as a correction officer from March 23, 2010, until her arrest and that her job required her to be alone in remote parts of the jail with sixty male inmates. Winters said that she had never received self-defense training and that she was afraid working in the jail. She also said that some of the inmates had threatened to rape her and cause her bodily harm. She said that the threats of rape terrified her because she had been raped at knife point when she was seventeen years old. She said she spoke to her superiors, including two sergeants and two captains, "over and over" about the threats that she had received from the inmates, and nothing was done to protect her.

-5-

Winters said that she was eventually approached by inmates to deliver packages containing contraband. She said she delivered seven packages beginning in December 2011. She earned $50 for each delivery and earned $350 in total. She said the first two packages contained hot chocolate, a lighter, and rolling papers. After she delivered the first two packages, the inmates began threatening her. Winters said that she assumed the last five packages contained contraband, but she denied opening or checking the packages. She said that the inmates threatened her so that she would keep delivering the packages. Winters explained the details of the last delivery just prior to her arrest:

> The [confidential informant] called me the day before. I put it off because I really didn't want to do it. I didn't want to do it from the get-go. But I put her off, and then she called again and just kept pushing, kept pushing, called again and told me–I can't remember who told who what, but I believe I told her that I would be at Wendy's at such and such time eating lunch, and so she came in, and she came into the bathroom and made the exchange in the bathroom.

> I put the package that was about this long and about that big around (indicating) down my bra. The $50, she handed that to me. I put that in my left pocket[.]

Winters stated that she entered her guilty pleas because she was guilty. She also stated that she had fully cooperated with law enforcement after her arrest. She claimed that she was under duress at the time she made the deliveries because she feared for her life. When asked by her attorney why she took the money if she had committed the crimes under great duress, Winters replied, "The money was just handed to me. . . . [I]t was not something I negotiated with them." She said that she would have made the deliveries even if she had not been paid because she feared what the inmates would do to her.

Winters said that in 1989 her husband had been addicted to crack cocaine and had written $2500 worth of bad checks. She said the police also charged her in the case because she knew that he had written the checks. She said that her adjudications of guilt were withheld on these charges and that she completed two years of probation and paid her fees and costs. Winters said that other than one speeding ticket, the case in Florida was the only time she had been charged with violating the law prior to this case.

Winters said that her Glaucoma diagnosis could be verified by Dr. Sarfarazzi, who treated her in Florida. She stated that Dr. Sarfarazzi did not prescribe marijuana for her but that she smoked marijuana because it helped relieve the pressure in her eyes from the Glaucoma. She admitted that she smoked marijuana daily but claimed that she did not smoke

it "in excess." She said she did not smoke marijuana while working as a correctional officer until her mother died. She said she also began using cocaine again, although she had not used it in twenty years, because she was around individuals who used it and because she was stressed after her mother's death. Winters said that if the trial court granted her split confinement, she would submit to an alcohol and drug assessment and would participate in intensive outpatient treatment, even though she did not believe she needed treatment. Winters admitted that she had written a draft letter to the sheriff resigning from her correction officer position before she was arrested. In the letter, which was never delivered, she stated, "The bottom line is that it's easier to deal with the inmates than inadequate and unprofessional co-workers." Winters explained that although she had problems with a few of the inmates, some of the inmates were easier to deal with than her co-workers. She admitted that the letter did not state that she was resigning because she feared for her life at work. Winters acknowledged that her offenses were wrong, that she was sorry for what she had done, and that she should be punished.

On cross-examination, Winters admitted that she had always been able to find a job and could have resigned from her job at the jail and found new employment. She claimed that she did not resign from her job as a corrections officer because she had a lease and other debts. Winters also admitted that she took a oath when she was hired by the Coffee County Sheriff's Department, which stated in pertinent part:

> I, Susan D. Winters, solemnly swear that I will perform with fidelity the duties of the office to which I have been appointed and which I am about to assume. . . .
>
> I further swear that I have not promised or given, nor will I give, any fee, gift, or bribe or gratuity for returning any person as a juror or for making any false return of any process, and that I will faithfully execute the office of deputy sheriff to the best of my knowledge and ability according to law.

She admitted that she had betrayed the aforementioned oath when she committed the offenses in this case.

Winters admitted that she was friends with Everett Muth while Muth was incarcerated in the Coffee County Jail. She also admitted that at the time of her sentencing, she and Muth were engaged to be married. Winters acknowledged that although she was displeased with her job, she did not resign. Moreover, she acknowledged that she never told Investigator Ferrell that the inmates were going to kill her if she did not make the contraband deliveries. Although she claimed she did not make the deliveries for the money she received, she admitted that she spent this money. She also admitted that when she picked up a package of

cocaine to deliver the jail, she had been given a separate package of cocaine for her personal use.

The trial court determined that Winters was a Range I, standard offender. See id. § 40-35-105. The court applied the mitigating factors that Winters had been consistently employed, had provided care to her elderly parents, was "somewhat cooperative with law enforcement[,]" and did not have a history of criminal behavior because the 1989 Florida case was a "nonissue[.]" See id. § 40-35-113(13). The court then applied enhancement factor (14), that Winters had abused a position of public trust in a manner that significantly facilitated the commission or the fulfillment of the offenses. See id. § 40-35-114(14). In applying this factor, the court stated:

> [Y]ou abused a position of public trust. You violated an oath that you gave. You talked about your religion and your upbringing and your attending church. Well, you certainly know what an oath means and what it means to violate one and to violate a trust.

After applying this enhancement factor, the court sentenced Winters to eight years for the bribery conviction, three years for the cocaine conviction, two years for the marijuana conviction, and eleven months and twenty-nine days for the drug paraphernalia conviction. See id. § 40-35-112. The court ordered all of these sentences to be served concurrently, for an effective sentence of eight years. See id. § 40-35-115. The court, in considering alternative sentencing, found that confinement was necessary to avoid depreciating the seriousness of the offense and was particularly suited to provide an effective deterrence to others likely to commit similar offenses. See id. § 40-35-103(1)(B). Although the court recognized that Winters had "served a significant amount of time," it determined that a sentence of full confinement was appropriate. At the conclusion of the hearing, the trial court sentenced Winters to an effective sentence of eight years in the Tennessee Department of Correction.

## ANALYSIS

As we previously noted, Winters did not include the transcript from the plea submission hearing in the record on appeal. "[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in Bise." State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012). The Tennessee Supreme Court noted that appellate courts have the authority to supplement the record pursuant to Tennessee Rule of Appellate Procedure 24(e) but stated that it did "not mean to suggest that the Court of Criminal Appeals must or should order supplementation of the

record in every case where the appellant fails to provide a transcript of the hearing on a guilty plea." Id. Instead, "[s]upplementation may be considered on a case-by-case basis and should be ordered only if the record is otherwise inadequate to conduct a meaningful appellate review on the merits of the sentencing decision." Id. "If, however, the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court." Id. (citing State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991)). The court concluded that "the mere fact that the transcript of the submissions hearing was not made a part of the record on appeal should not preclude review under the standard adopted in Bise." Id. Because we conclude that the record is sufficient for meaningful review under the standard in Bise, we will address the issue presented on appeal.

Winters argues that the trial court erred in denying her a sentence of split confinement; specifically, she contends that the trial court should have given her credit for the 269 days that she had already served in jail and should have allowed her to serve the balance of her effective eight-year sentence on probation. First, she argues that the trial court erred in determining that the seriousness of the offense and the need for deterrence required a sentence of full confinement. Second, she contends that the trial court erred in failing to apply all of her requested mitigating factors. Third, she asserts that the trial court erroneously applied enhancement factor (14) because she claims this factor is an element of the offense of bribery of a public servant. Fourth, she argues that the court failed to apply the purposes and principles of the sentencing act, specifically that "[t]he sentence imposed should be no greater than that deserved for the offense committed[,]" that "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[,]" that the sentence should be "justly deserved in relation to the seriousness of the offense[,]" and that confinement should be reserved for "convicted felons committing the most serious offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation[.]" T.C.A. § 40-35-102(1), (5), -103(2), (4).

In response, the State contends that Winters has failed to show that the trial court abused its discretion in sentencing her to an eight-year sentence in confinement. Upon review, we affirm the judgments for bribery of a public servant, possession of marijuana with the intent to sell or deliver, and possession of drug paraphernalia. However, because the record indicates that Winters entered a guilty plea to the indicted offense of possession of .5 grams or more of cocaine with the intent to sell or deliver, a Class B felony, rather than the offense of possession of less than .5 grams of cocaine with the intent to sell or deliver, a

Class C felony, we reverse the judgment in count 2 and remand the case for resentencing on that count.[2]

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d), Sentencing Comm'n Comments.

Because of the broad discretion given to trial courts by the 2005 amendments to the sentencing act, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. This standard of review applies to a trial court's decision regarding "probation or any other alternative sentence." Caudle, 388 S.W.3d

---

[2] Count 2 of the indictment provides that "Winters . . . did possess a controlled substance, .5 GRAMS OR MORE OF COCAINE, SCHEDULE II, . . . with the intent to sell or deliver, in violation of T.C.A. 39-17-417[.]" At the beginning of the sentencing hearing, defense counsel announced, "Winters did plead open to the indictment . . . . We simply just could not reach an agreement as to the manner of sentence."

at 278-79. Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, Winters has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the trial court's sentence in this case. Id. at 280.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D). We note that because Winters entered guilty pleas to two Class B felonies, she was not considered a favorable candidate for alternative sentencing for these convictions. See id. § 40-35-102(6)(A).

In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Tennessee Code Annotated section 40-35-102(5) gives courts guidance regarding the types of defendants who should be required to serve their sentences in confinement:

In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

Winters argues that the trial court should have ordered her to serve the majority of her eight-year sentence on probation. We note that Winters was eligible for probation because each of her sentences was ten years or less and the offenses were not specifically excluded by statute. T.C.A. § 40-35-303(a). While the trial court shall automatically consider probation as a sentencing alternative for eligible defendants, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)).

Here, the trial court properly denied a sentence of split confinement based on the seriousness of the offenses and the need to deter other likely to commit similar offenses. See id. § 40-35-103(1)(B). The court stated, "[W]e have a tremendous problem–as diligently as the sheriff's department and jail staff work to keep drugs out, it's hard to keep them out, and it's certainly hard when one of their own brings them into the jail." Investigator Ferrell testified that drugs in the Coffee County Jail had been a serious problem and the presence of drugs affected the safety of the inmates, the correction officers, and visitors to the jail. He also testified that Winters was not the first correction officer who had delivered contraband to the jail and that he had an open investigation regarding other public officials, including correction officers, who were currently delivering drugs and other contraband to the jail. We conclude that sufficient proof was presented at the sentencing hearing regarding the need to deter other individuals from committing similar offenses in Coffee County. See State v.

-12-

Nunley, 22 S.W.3d 282, 286 (Tenn. Crim. App. 1999) (holding that in order to use deterrence as a justification for confinement, evidence must be presented indicating some special need for deterrence in that jurisdiction). We also conclude that the circumstances of the offense were sufficiently reprehensible to require a sentence of full confinement in this case. State v. Bottoms, 87 S.W.3d 95, 103 (Tenn. Crim. App. 2001) (holding that when a trial court relies on Code section 40-35-103(1)(B) in ordering confinement, the circumstances of the offense must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence of probation (citations and internal quotation marks omitted)). In light of the evidence presented at the sentencing hearing, we conclude that Winters failed to establish her suitability for probation and that the trial court properly ordered confinement in this case pursuant to Code section 40-35-103(1)(B).

We also conclude that the trial court did not err in failing to apply all of the requested mitigating factors. The court declined to apply mitigating factor (1), see T.C.A. § 40-35-113(1), that Winters conduct neither caused nor threatened serious bodily injury, stating:

> I certainly think that [Winters's] actions, as Investigator Ferrell testified to, certainly put not only herself, her fellow co-workers, and her inmates and the other inmates at risk of bodily injury, but maybe other persons who were visiting in the jail: attorneys, family members, etc.
>
> So many people were put into harm's way as a result of taking these drugs into the jail. So I don't find that to be a mitigating factor. Just because someone, fortunately, wasn't injured does not make that a mitigating factor.

The court also chose not to apply the mitigating factors that substantial grounds existed tending to excuse or justify Winters's criminal conduct, though failing to establish a defense; that although guilty of the crime, she committed the offenses under unusual circumstances that it was unlikely that a sustained intent to violate the law motivated the criminal conduct; and that she acted under duress or under the domination of another person, even though the duress or the domination of another person was not sufficient to constitute a defense to the crimes. See id. § 40-35-113(3), (11), (12). The court rejected these mitigating factors:

> Basically, the defendant says she was under duress because of her working conditions, that she was in . . . fear . . . of these inmates. I find her testimony less than credible in this situation. She's obviously a very intelligent woman. She's held . . . numerous jobs. She's educated. She's well spoken.

She had a wonderful upbringing, as far as I can tell. She's not like so many of the defendants we see who grow up with very little guidance or very little anyone to instruct them as to what's right and wrong and how to conduct their lives. She certainly had every advantage, it seems to me, in her upbringing. She had other options that many people don't have because of their situation.

I feel for the [rape] that happened to you when you were 17 years old. You have my greatest sympathy. That would be a horrible thing for anyone to endure. But it's not a justification for what you did in this particular case. And you seem to be able to have functioned throughout your life from age 17 [until] now without it being a terrible disruption, although, again, you have my greatest sympathy. That's just a horrible thing to have happen to someone.

But you had other options, Ms. Winters. You have a long work history. It seemed to me it boiled down to, do I keep my paycheck or do I commit a crime? And although being without a paycheck is a bad thing, certainly, committing the type of crime that abuses public trust, there's no question there what the right decision should have been, especially for someone of your intelligence and your background to have made that kind of decision.

. . . [G]oing back to the credibility issue on the duress, the taking of the $50 for each time that you–and spending it, just does not lend any credibility to your argument, Ms. Winters.

The record supports the court's rejection of Winter's duress claim because the proof at the sentencing hearing showed that she used her job as a corrections officer to intentionally and repeatedly deliver drugs to inmates in exchange for cash.

The court also found that Winters was not remorseful under the "catch-all" provision of Tennessee Code Annotated section 40-35-113(13). The court questioned whether Winters was genuinely sorry for her actions:

Although she did plead guilty to the crimes and acknowledge her wrongdoing without placing a strain on the court system, I did not find her–it seems her remorse comes more from her being caught than otherwise, and her–the statement that she made about she'd go to . . . some kind of alcohol and drug treatment if that was what was ordered, but she really didn't think she would need it, kind of leaves–again, that–I found that did not really comport with her idea of being remorseful and sorry for what she had done.

-14-

Next, this court has been unable to find any Tennessee authority regarding whether enhancement factor (14), abuse of a position of public trust in a manner that significantly facilitated the commission or the fulfillment of the offense constitutes an element of the offense of bribery of a public servant. See id. § 40-35-114(14). Tennessee Code Annotated section 39-16-102(a)(2) states that a person commits the offense of bribery of a public servant when he or she, "[w]hile a public servant, solicits, accepts or agrees to accept any pecuniary benefit upon an agreement or understanding that the public servant's vote, opinion, judgment, exercise of discretion or other action as a public servant will thereby be influenced." While enhancement factor (14) refers to an individual abusing a position of public trust to commit a crime, the bribery offense involves the public servant's acceptance of money to influence his actions. We acknowledge that there is no material difference between enhancement factor (14) and the offense of bribery. Nevertheless, the record shows that the court imposed the minimum sentence in the applicable range for the bribery conviction. Accordingly, any error in applying enhancement factor (14) to Winter's case does not effect her sentence.

Finally, we conclude that the trial court considered the purposes and principles of the sentencing act before denying Winters a sentence of split confinement. Initially, as previously stated, the court imposed the minimum sentence in the applicable range for the bribery conviction. Although the court noted that Winters did not have a criminal history, it properly determined that the seriousness of the offenses and the need to deter others from committing similar offenses warranted a sentence of total confinement. See id. § 40-35-103(1)(B). As we have previously stated, the record fully supports this determination. The court also found that Winters's claim of duress was not credible, that she was not truly remorseful for her actions, and that she had abused a position of public trust by using her job as a corrections officer to commit these offenses. Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, we conclude that the trial court did not abuse its discretion in imposing a sentence of confinement in counts 1, 3, and 4. Therefore, we affirm the judgments for bribery of a public servant, possession of marijuana with the intent to sell or deliver, and possession of drug paraphernalia. However, because the record clearly indicates that Winters entered a guilty plea to the indicted offense of possession of .5 grams or more of cocaine with the intent to sell or deliver, a Class B felony, we reverse the judgment of conviction in count 2 and remand the case for resentencing on that conviction. Because a lengthy sentencing hearing has already been conducted, the trial court may consider the evidence previously presented in resentencing Winters on count 2.

**CONCLUSION**

-15-

The trial court's judgments in counts 1, 3, and 4 are affirmed. Because the record clearly indicates that Winters entered a guilty plea to the indicted offense of possession of .5 grams or more of cocaine with the intent to sell or deliver, a Class B felony, we reverse the judgment of conviction in count 2 and remand the case for resentencing on that conviction.

_____
CAMILLE R. McMULLEN, JUDGE